Casey, C. J.,
delivered the opinion of the court:
The facts of the case are as follows :
In the year 1848, on the acquisition of the Territory of California by the United States, Commodore Thomas Ap 0. Jones was in command of the United States naval force in the Pacific ocean, duly commissioned as commander thereof, and representing the United States in that region. The Secretary of the Navy, on the 14th April, in the same year, 1848, sent to him, as chief commander, a steam saw mill and other machinery, designed to be erected on shore, for the use of the navy. The commodore, on the 7th April, 1849, made a written contract with one Robert A. Parker for the erection of the mill, and running • the same, and delivered the same to him, and which was erected and run until the 28th January, 1850, when Commodore Jones rescinded the contract and resumed possession of the mill, because of the disapproval of the Secretary of the Navy, and his order to that effect; and the commodore then contracted for the storage and safe-keeping of the same, together with other property of thejUnited States, with Messrs. Ostrand & Standish, at Sancilito, in the State of California, at $1,200 a month.
Robert A. Parker had previously assigned his contract and interest therein to one James McCormick; and the latter claiming damages, referees were on the 22d June, 1850, named by each party, to determine the same; to wit: Purser John N. Hamilton, by the United *331 States, and Talbot H. Green, by McCormick. On the 9th day of July thereafter, the referees made an award under their hands, certifying $25,766 51 to be due in the premises by the United States to McCormick, and awarded the payment thereof.
In 1851, and again in 1852, the Secretary of the Navy directed the navy agent and district attorney of the United States for the district of California to proceed for recovery of said property, and to assert the rights and protect the interests of the United States ; and accordingly a bill was filed in the United States district court in California, in 1852, by the United States as complainants, against Robert A. Parker, James McCormick, William S. Heslep, and Treat F. Peck, defendants, seeking an account of the matters aforesaid, and praying restitution of said mill.
William S. Heslep and Treat F. Peck had purchased of Ostrand & Standish the storage contract, and were then its owners, and had also purchased the real estate whereon Parker had erected the mill.
In this suit the regular and usual proceedings were had; reference was made to a master to take testimony and report facts, and the same was accordingly duly done; and on the 12th day of March, 1853, a final decree was pronounced by the court, whereby the award in favor of Parker was declared null and void, and was cancelled, and there was found due to Heslep and Peck for storage $10,360, and the payment thereof with interest at six per cent, per annum from the 1st day of May, 1851, was decreed to be made by the United States to Heslep' and Peck.
It was alleged in the petition that Heslep and Peck, on the 8th day of April, 1853, made and constituted Augustus M. Peck, by a written instrument, their attorney in fact, to receive, transfer, sell, or collect the amount of said decree, with power of substitution; and that in virtue- of such power of substitution, he, on the 27th of September, 1853, appointed Platt and Stewart, of thecity of Washington, attorneys for the purposes aforesaid. It is then further averred that on the 20th day of March, 1854, Platt and Stewart, by virtue of the power of attorney recited, conveyed all the legal right, title, and claim to such decree to James Adams, the plaintiff in this record.
It is further averred that J ames Adams held under such assignment as a mere trustee, for the use of the real and beneficial owners of the claimant.
These powers of attorney and assignments alleged have not been given in evidence, and the claimant, James Adams, has therefore shown no right or title in this claim, nor any authority to maintain *332 this action. We might rest the case here. Without such showing he would have no color of right. But believing that such letters of attorney are in existence, and that the failure to produce them is an oversight, we would not for that cause alone dismiss the petition, without giving the party an opportunity of supplying that omission. But as we view the case, full proof of these would not improve the claimant’s chances of a recovery.
In the first place the decree is rendered after the passage of the act of Congress of the 26th of February, 1853. Section 1st of that statute provides that “ all transfers and assignments hereafter made of any claim upon the United States, or any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders or other authorities for receiving payment of any such claim, or any part or share thereof, Bhall be absolutely null and void, unless the same shall be freely made and executed in the presence of at least two attesting witnesses, after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof.”
The case of Cooper v. The United States, 1 C. Cls. R., p. 87, is conclusive as to the construction we have given to this statute. The court say: “This section, as we decided in the case of Sines v. The United States, at the present term, makes the attempted transfer ‘absolutely null and void.’ It is useless to refine upon this provision, or attempt to fritter away the plain and explicit words used by Congress when they say: ‘All transfers and assignments of any claim upon the United States.’ We can only judge of what they intended by what they have said. And when they say that all assignments of any claim upon the United States ‘ shall he absolutely null and void’ unless made after the allowance and liquidation of the claim, we must suppose they knew what they were doing, and meant what they said.”
The same.doctrine is held in the case of Pierce v. The United States, 1 C. Cls. R., p. 270; and at the present term, in the case of Martin et al. v. The United States, 3 C. Cls. R., p. 64. Until these rulings shall have been reversed by the Supreme Court of the United States, we must consider the doctrine settled in this court, and that had the claimant even produced full proof of all the letters of attorney, and all the assignments in the case, they would have been unavailing to enable him to recover in his own name.
But a still more formidable obstacle presents itself in the way of the claimant’s recovery. The suit is founded on the decree of the *333 district court of the United States for the northern district of California, finding due to Heslep and Peck, two of the defendants in that case, the. sum of $10,360 and decreeing that the same sum is due and payable to them, from the United States, with six per cent, interest from and after the first day of May, 1857. Under these facts it cannot be distinguished from the case of Tillou, ex’r of Eckford, v. The United States, reported in 1 C. Cls. R., p. 220. A similar judgment of a circuit court of the United States rendered in favor of a defendant, upon a suit brought by the United States, and set-off pleaded under the act of 1797, was given in evidence, in that case, under objection. We held that the court had jurisdiction of the set-off. That being an indivisible claim, the finding in favor of the defendant, and the judgment entered upon it remaining unreversed, was conclusive of the indebtedness of the United States to the party. But on appeal to the Supreme Court of the United States the judgment was reversed. And it is there held that “ the extent of the authority conferred by the act of 1797 is that the defendant, when sued by the United States, may exhibit his claims for credit if they come within the prescribed conditions, but they can only be admitted as claims for credit, and not as demands for judgment.” It was further held that the State laws in such case do not constitute the rule of decision, but that the question arises exclusively under the act of Congress, and no local law or usage can have any influence in its determination. It is there held that “ the defendant may prove his set-off or counter-claim, to an amount sufficient to discharge the whole claim of the plaintiffs, in which event he will be entitled to judgment that he go thereof without day, hut the circuit court “possesses no jurisdiction to render judgment for any excess of set-off over the plaintiff’s claim.”
That case is directly in point here. This claim is exclusively founded upon the judgment or decree of the district court of California against the United States, in the proceedings set forth. Under the ruling cited in the Tillou case, this was beyond the jurisdiction of the court, and to that extent void. For the principles and authorities upon which the doctrine rests we refer to the very able opinion of Mr. Justice Clifford in that case.*
The judgment of the court is that the petition in this case be dismissed, and that the defendants go thereof without day.

See cases appealed to the Supreme Court of the United States, in this volume.